UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:23-cr-307-MO |
| v. | INFORMATION |
| TYLER MANDERA, | 18 U.S.C. §§ 1344, 1028A |
| Defendant. | FORFEITURE ALLEGATION |

THE UNITED STATES ATTORNEY CHARGES:

**INTRODUCTORY ALLEGATIONS**

At all times relevant to this Information:

1.     **TYLER MANDERA ("MANDERA")**, defendant herein, resided in Oregon.

**The Paycheck Protection Program**

2.     On March 27, 2020, President Trump signed the Coronavirus Aid, Relief, and Economic Security (CARES) Act into law.  The CARES Act created the Paycheck Protection Program ("PPP"), which authorized the Small Business Administration ("SBA") to guarantee loans of up to $10,000,000 to qualifying employers without collateral or personal guarantees from the borrowers.  The Act required lenders making loans under the PPP to defer all repayment obligations for not less than six months on such loans and required borrowers to

**Information**                                                                                        **Page 1**

certify, among other things, that the borrowed "funds [would] be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments."

3.      Under the CARES Act, the amount of PPP funds a business is eligible to receive is determined by the number of employees employed by the business and their average payroll costs.  The PPP allows qualifying small businesses and other organizations to receive unsecured SBA-guaranteed loans.  PPP loan proceeds must be used by businesses on payroll costs, mortgage interest, rent, and/or utilities, among other specified expenses.  The PPP allows the interest and principal to be forgiven if businesses spend the proceeds on these expenses under certain conditions.  Businesses applying for a PPP loan must provide documentation to confirm that they have in the past paid employees the compensation represented in the loan application.

4.      The PPP is overseen by the SBA, which has authority over all PPP loans, but individual PPP loans are issued by approved commercial lenders who receive and process PPP applications and supporting documentation.  The first round of PPP closed to new applications on August 8, 2020.

5.      On December 27, 2020, the Consolidated Appropriations Act of 2021, which included the Economic Aid to Hard-Hit Small Businesses, Nonprofit, and Venues Act (the "Relief Act") was signed into law, providing additional funding for the PPP.  Under the Relief Act, certain businesses that already obtained a PPP loan under the original PPP were eligible for an additional "second draw" PPP loan, provided they met certain requirements.  The Relief Act also re-opened the application period for "first draw" PPP loans to businesses that had not been approved for a "first draw" loan prior to August 8, 2020, or who may have been eligible to receive more funds during the "first draw" period than they received.  Borrowers through the

**Information**                                                                                   **Page 2**

PPP second draw program are also eligible to apply for loan forgiveness once all loan proceeds for which forgiveness is requested have been used.

6.      To obtain a PPP loan, an applicant was required to provide information about the subject business's operations, such as the date of opening, number of employees, and past revenues.  The applicant was also required to certify that he or she had not suffered any disqualifying criminal convictions and that all the information in the application was true and correct to the best of the applicant's knowledge.

7.      Customers Bank was a lender participating in the PPP program.  Customers Bank was insured by the Federal Deposit Insurance Corporation (or otherwise covered by 18 U.S.C. § 20).

## The Economic Injury Disaster Loan Program

8.      he Economic Injury Disaster Loan Program ("EIDL") was a United States SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

9.      The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

10.     To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.  In the case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019, to January 31,

2020.  The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

11.    EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor.  The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold, as described in paragraph 10 above.  Any funds issued under an EIDL loan were issued directly by the SBA.

12.    EIDL loan funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  If the applicant also obtained a loan under the PPP, the EIDL loan funds could not be used for the same purpose as the PPP loan funds.

## COUNT 1
### (Bank Fraud)
### (18 U.S.C. § 1344)

13.    The allegations in paragraphs 1 through 12 of this Information are incorporated as though realleged herein.

## THE SCHEME

14.    From not later than June 2020 and continuing through at least March 2022, defendant **MANDERA** devised and intended to devise a material scheme to defraud the SBA and various financial institutions and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

15.    Specifically, **MANDERA** applied for and obtained PPP and EIDL loans using false borrower information and the personal identifying information of others with the intent to

steal and to convert the proceeds of those loans to his personal use and without any intent to repay those loans or to use the proceeds thereof for any authorized purposes.

**EIDL – Tyler Mandera**

16.     **MANDERA** submitted his first fraudulent loan application on June 19, 2020. **MANDERA** submitted a fraudulent EIDL application (application #3305453519) on behalf of "Tyler Mandera," an "independent contractor."  On that application, **MANDERA** falsely claimed that the business was established in February 2018, had 2 employees, his 2019 gross revenues were $21,000, and his 2019 cost of goods sold was $9,000.  The SBA approved the EIDL loan and disbursed $4,000 to **MANDERA** BOA bank account as well as a $2,000 EIDL advance payment.

**PPP – Tyler Mandera**

17.     On July 27, 2020, **MANDERA** submitted his second fraudulent loan application that was funded.   On behalf of "Tyler Mandera," a "home furnishing sales" business, he applied for a PPP loan of $8,740 from Kabbage, Inc.

18.     "Tyler Mandera" was a fictitious business.

19.     On that application, **MANDERA** false claimed that "Tyler Mandera" was an "[e]ligible self-employed individual", employed 1 person, and had an average monthly payroll of $3,496.

20.     With this application, **MANDERA** submitted fictitious business invoices and a 2019 IRS 1040 Schedule C, Profit or Loss from Business, for a home furnishing sales business, in which he claimed $112,772 in gross receipts and sales, and total expenses as $128,228, resulting in a net profit of $41,954.  These were fabricated documents created to support **MANDERA'S** PPP application.

**Information**                                                                                      **Page 5**

21.    Kabbage, Inc. approved the loan application and disbursed $8,740 to a bank account under **MANDERA'S** control.

22.    The SBA paid lender fees of $437.00 to Kabbage, Inc. for funding this loan.

23.    **MANDERA** subsequently submitted a fraudulent forgiveness application claiming the entirety of the loan amount was spent on payroll.  The SBA forgave the loan and paid Kabbage Inc. $8,740 in principal and $95.78 in interest.

**PPP – River Hiatt**

24.    On August 3, 2020, **MANDERA** submitted another fraudulent application and used the identity of his now deceased uncle.  On behalf of River Hiatt, a "household appliance sales" business, defendant applied for a PPP loan of $8,071 from Kabbage, Inc.

25.    "River Hiatt" was a fictitious business.

26.    On that application, **MANDERA** false claimed that "River Hiatt" was an "eligible self-employed individual" that employed 1 person and had an average monthly payroll of $3,229.

27.    With this application, **MANDERA** submitted a falsified driver's license with River Hiatt's personal identifying information and a picture of an actor.  **MANDERA** also submitted a fictitious business invoice and a 2019 IRS 1040 Schedule C, Profit or Loss from Business, for a household appliance sales business, in which he claimed $77,952 in gross receipts and sales, and total expenses as $39,211, resulting in a net profit of $38,741.  These were fabricated documents created to support **MANDERA'S** PPP application.

28.    Kabbage, Inc. approved the loan application and disbursed $8,071 to a bank account under **MANDERA'S** control.

29.    The SBA paid lender fees of $403.55 to Kabbage, Inc. for funding this loan.

**PPP – Tyler Mandera (Second Draw)**

30.    On January 30, 2021, **MANDERA** submitted another fraudulent application. This application was a second draw of his first application ("PPP – Tyler Mandera").

31.    **MANDERA** made the same misrepresentations about the fictitious business using the same fictitious documents.

32.    Kabbage, Inc. approved the loan application and disbursed $8,740 to a bank account under **MANDERA'S** control.

33.    The SBA paid lender fees of $2,500 to Kabbage, inc. for funding this loan.

34.    **MANDERA** subsequently submitted a fraudulent forgiveness application claiming the entirety of the loan amount was spent on payroll.  The SBA forgave the loan and paid Kabbage, Inc. $8,740 in principal and $96.74 in interest.

**PPP – Greatfusion LLC**

35.    On April 21, 2021, **MANDERA** submitted another fraudulent loan application. On behalf of "Greatfusion LLC" an "electronics sales" business, **MANDERA** applied for a PPP loan of $41,444 from Cross River Bank.

36.    Greatfusion LLC was a fictitious business.

37.    On that application, **MANDERA** falsely claimed that Greatfusion LLC was established in December 2018, employed 2 people, and had an average monthly payroll of $16,577.66.

38.    With this application, **MANDERA** submitted three fictitious business invoices and an IRS Form 940, Employer's Annual Federal Unemployment Tax Return, for a business named "Tyler Mandera", in which he claimed $204,875 in total payments to all employees in 2019.  **MANDERA** also submitted a copy of Articles of Incorporation for Greatfusion LLC

**Information**                                                                                     **Page 7**

which was fraudulently modified to change the dates from September 11, 2020 to December 10, 2018. These were fabricated or modified documents created to support defendant's PPP application.

39. Cross River Bank approved the loan application and disbursed $41,444 to a bank account under **MANDERA'S** control.

40. The SBA paid lender fees of $2,500 to Cross River Bank for funding this loan.

41. **MANDERA** subsequently submitted a fraudulent forgiveness application claiming the entirety of the loan amount was spent on payroll. The SBA forgave the loan and paid Cross River Bank $41,444 in principal and $214.60 in interest.

**PPP – David Huffman**

42. On or about April 9, 2021, **MANDERA** submitted another fraudulent application and did so using David Huffman's personal identifying information without Mr. Huffman's knowledge or consent. On behalf of David Huffman, a "furniture store" business, defendant applied for a PPP loan of $20,833 from Customers Bank, a federally insured institution.

43. "David Huffman" was a fictitious business.

44. On that application, **MANDERA** falsely claimed that "David Huffman" was established in 2018, employed 1 person and had $123,012 in gross income in 2019.

45. With this application, **MANDERA** submitted two fictitious business invoices and a 2019 IRS 1040 Schedule C, Profit or Loss from Business, for a furniture store business, in which he claimed $123,012 in gross receipts and sales, and total expenses as $9,303, resulting in a net profit of $99,554. These were fabricated documents created to support **MANDERA'S** PPP application.

46.     Customers Bank approved the loan application and disbursed $20,833 to a bank account under **MANDERA'S** control.

47.     The SBA paid lender fees of $2,500 to Customers Bank for funding this loan.

48.     This loan was subsequently liquidated and the SBA purchased the loan from Customers Bank for $20,833 in principal and $396.79 in interest.

**Additional Fraudulent Applications**

49.     In addition to the fraudulent applications, which were funded, **MANDERA** submitted three fraudulent EIDL applications and four fraudulent PPP applications on behalf of fictitious businesses that were declined.

50.     In four of these applications, **MANDERA** again used the personal identifying information of his uncle and David Huffman, and in two others he used the personal identifying information of two other individuals without their knowledge or consent.

## BANK FRAUD

51.     On or about April 9, 2021, in the District of Oregon and elsewhere, defendant **TYLER MANDERA** did execute the scheme or artifice described above to obtain funds under the control of Customers Bank, a federally insured institution, by means of materially fraudulent pretenses and representations, in that defendant applied for and obtained a PPP loan of $20,833 while knowingly and willfully using the personal identifying information of another on behalf of a fictitious business.

All in violation of Title 18, United States Code, Section 1344.

/ / /

/ / /

/ / /

**Information**                                                                                           **Page 9**

## COUNT 2
### (Aggravated Identity Theft)
### (18 U.S.C. § 1028A)

52.    Count 1 of this Information, along with all allegations in support thereof, are incorporated as though realleged herein.

53.    On or about April 9, 2021, in the District of Oregon and elsewhere, defendant **TYLER MANDERA** did knowingly use, without lawful authority, the means of identification of another person, to wit the name of David Huffman, during an in relation to the felony violation of 18 U.S.C. § 1344 charged in Count 1 of this Information, knowing that the means of identification belonged to another actual person.

All in violation of Title 18, United States Code, Section 1028A.

## FORFEITURE ALLEGATION

54.    Upon conviction of the bank fraud offense alleged in Count 1 hereof, defendant shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(2) any property constituting or derived from proceeds defendant obtained directly or indirectly as a result of the said violations.

55.    If the above-described forfeitable property, as a result of any act or omission of defendant:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C.

**Information**                                                                                          **Page 10**

§ 982(b), to seek forfeiture of any other property of said defendant up to the value of the

forfeitable property described

above. Dated: September 26, 2023               Respectfully submitted,

NATALIE K. WIGHT
United States Attorney


*/s/ Meredith D.M. Bateman*
MEREDITH D.M. BATEMAN, OSB #192273
Assistant United States Attorney